United States Court of Appeals for the Fourth Circuit. Be seated. Our final case for the day is United States v. Fluker. Ms. Lee. Thank you. Thank you. May it please the Court, my name is Christine Lee and I represent Mr. Fluker. Mr. Fluker has been in prison for a very long time since 1992 serving consecutive sentences for events that happened in 1992 and 1996. Thanks to the Supreme Court's decision in Johnson University, United States in 2015, Mr. Fluker was granted a full resentencing that occurred in November, on November 2nd. The offenses that he committed in 1992, although they yielded a guideline range in 1992 of 360 months to life, under today's statutes and guidelines would only yield a sentencing guideline range of 51 to 63 months to be followed by a 60-month consecutive mandatory sentence. Well, the government seems to have conceded a number of the issues that are raised about career offender status, which guidelines to use, so it seems that the only real issue in the evidentiary issues is the mootness argument. Yes, sir. So why don't you tell us why this isn't moot. It's stunning that the government concedes that just in November he was sentenced as a career offender when he shouldn't have been a career offender yet. There's nothing this Court can do about it, even though he remains in federal prison. The biggest reason why the case is not moot is because Mr. Fluker is in federal prison and has never been released. Every case the government relies upon to urge mootness on this Court involve persons who were actually released from their sentences, from the sovereign about whose sentence they were complaining about. So if you sent this case back and Mr. Fluker were resentenced under the 2016 guidelines, as you and the government agreed, would have been the case? Actually, it would be nice if the Court recognized that because Jackson was compelled by published, even though unpublished, it was compelled by published. Jackson is unpublished. Right. It was compelled by published precedents. So is it your position we need to say that Jackson, in a order for you to apply the 2016 guidelines? I don't believe the Court has to say that. Okay. And the reason is, I would very much like you to and I believe the Court should say that. Which would be that the Jordan statute is not categorically a crime of violence? Under the current guidelines. Because of the snatching? Sudden snatching. The sudden snatching. I'm sorry? Subpart 3. Subpart 3. That's correct. Sudden snatching. That's correct. So I do want to emphasize that the Jackson decision wasn't just made up to kind of get rid of a case. It was directly compelled by the precedent of Gardner and it's unmodified as the government concedes by Gattis. And the Jackson decision came down two, three weeks after Judge Urbanski disposed of this case under the Jackson statute. Which is so significant. Because if I had had the power of foresight and known to ask for a continuance for three weeks, based on our experience with this particular district judge in this case and the weight that he gives to pronouncements of the Court of Appeals regarding what's a crime of violence, as well as the weight which is appropriate that he places on the guidelines calculations, I do believe my client would have been released in the fall. At a minimum, he would be facing less time than he is facing now. His actual release date would have been moved up. And that's the point. Jackson, Gattis came after Jackson. Right. But it would be a Jackson analysis as informed by Gattis. Yes. Gattis being about a different statute. Jackson being about, yeah, it's the statute on point. Exactly. The statute in question in Gattis did not have the sudden snatching component, which courts agree takes a robbery statute outside of the realm of... Gattis took the model penal code out of the analysis. It sure did. It sure did. But there's nothing in the law or in Gattis to suggest that sudden snatching would be covered. Right. You'd have to put the two together. That's fair. That's fair. And I believe that Jackson was correctly decided even with Gattis that came after it as the government agrees. So what do you want the court to do? I would like the court to do what it does in any case where it's a direct appeal, the guidelines were misapplied, someone was considered a career offender who should not have been a career offender, is vacate the sentence and send it back to the district court for resentencing. It is not speculative to believe that if the court were to vacate a sentence, an actual resentencing would follow. An actual resentencing where Mr. Fluker would not be a career offender. That fact alone distinguishes it from the cases that the government relies upon where the courts have found mootness, where relief depended on some future as yet unrealized set of circumstances. It may be speculative to believe that a sentence could influence his future sentence or his future guidelines. That would be speculative and indeed I would not be before this court asking for a client to be relieved of circumstances that flow from a future commission of a crime. This is so concrete, it almost challenges the concept of a collateral consequence. It's really a direct consequence of his sentence that he's still in prison. If his counsel has confirmed his release date would change by as much as the district court in this case were to change his sentence. I would direct the court to a statute that I did not cite in the brief and the government did not cite either and that is 18 U.S. Code 3584 subsection C. My theme states that multiple terms of imprisonment order to run consecutively or concurrently shall be treated for administrative purposes as a single aggregate term of imprisonment. Relying on that statute, that statute is sort of the background of every policy statement or guideline the Bureau of Prisons issues. The fact that in the most technical sense Mr. Fluker has completed the Virginia federal sentence and is quote only serving the Florida federal sentence is solely the product of the Bureau of Prisons policy statement which could change tomorrow. They make up their policy statements and the policy statement has to be consistent with the statute. He is not actually released from his federal sentence until he actually gets, the one I'm appealing, until he actually gets out of prison and begins his term of supervised release. That conclusion is compelled by the 2000 Johnson Supreme Court decision where a gentleman was seeking to have his supervised release term to be, he had a sentence that was shortened or one of the sentences was vacated and he wanted his supervised release term to be considered to have started earlier. The supervised release statute states that supervised release begins upon, supervised release supervision begins upon your release. They said that it would do violence to the concept of release to say that it occurred while he was still in prison. For that very similar to the position that the government asked the court to adopt today that he has been released from his sentence even though he's still in prison by the same organization, the Federal Bureau of Prisons and his term of supervised release in this very case has not yet begun. Okay I just want to go back to something you said about Jackson that we don't have to sort of adopt it to get to this resentencing but it would be good if we should. I'm sorry, it would be good if we did and we should. Why don't we have to do that to get to the sentencing just because the government's not really testing it? That has to do with the fact that I had moved on Mr. Fluker's behalf immediately after the Jackson decision. Within days I moved for a remand and the reason I moved for a remand is because the district court in this case said words to the effect of I have to interpret the guidelines or the crime of violence definition in a way that the courts counsel me to do. There's no precedent in the Fourth Circuit for Georgia robbery and in the absence of that precedent published or unpublished I'm going to rely on an unpublished opinion from a different circuit. 11th Circuit. 11th Circuit. So why don't you need the Jackson principle? Jackson's not present. His statement would still be correct. Right but this particular judge would be moved by the fact that this court had an unpublished opinion. He still wouldn't have any precedent. He's not governed by what the 11th Circuit said is unpublished and he's not governed by Jackson because it's unpublished. So I think it sounds to me like you ought to have the Jackson. I like Jackson. It needs to be resolved. Yes. Whether it's the right rule or the wrong rule. Now the one thing I know for sure is my or unpublished opinion of this court to help him apply the Gardner precedent to the Georgia robbery statute and because of the the unique timing in this case where Jackson came out just so quickly after sentencing and actually I had naively requested that the government consent to a remand because in my past experience that is the kind of situation where the government would have consented to a remand. They would have said the district court did not have all the information it wanted and now it does. We do not object to a remand. There's new and there's new legal information for the court to consider. In this case what it said was no don't remand because we still have a pending cross appeal and we don't want to lose it and separate it. They have dismissed a cross appeal and I still have a pending motion for a remand. It's basically a motion for a remand in light of intervening events that event being the issuance of Jackson. Being the non precedent of Jackson. But very persuasive and compelled by published precedent. Yes. I will bring the court's attention to the fact that in court the the 11th Circuit opinion that the district court relied upon was under the old guidelines. It wasn't under the 2016 guidelines. It was under a residual clause guidelines. It was a residual clause case. The case of Cooper. But I and I tried to say to the court but that's under the residual clause. We need to look at the 2016 guidelines to see if he's a career offender under the 2016 guidelines. And he said well in that situation I'm going by what I said in Hector Batista and there's cases out there that say that Georgia robbery is generic robbery and I can't think of them right now but I know they're out there. And counsel's efforts have been completely unfruitful in finding out what the court could have been referring to. There's no case certainly referred to in Hector Batista who is now being resentenced on independent grounds either. Can I just ask one really fast question? Yes. You have this additional argument that the district court used its discretion in taking this new testimony at resentencing. Yes. If we were to agree that the sentence needed to be vacated, it needed to go back to resentencing, do we have to reach that issue? Yes, your honor. Yes. To guide the resentencing process. And if there are no additional questions. Thank you. Good morning. Thank you, your honor. Yes, since the government has conceded that part of the issues here with respect to career offender and the proper guidelines, I'm a little befuddled as to the mootness issue. Why is this case moot? If it goes back, there's a guideline sentence or anything close to a guideline sentence, which I think you all agree what the proper guidelines are, then it would appear that Mr. Fluker might actually walk out of jail as soon as the district court rules. If the court were to remand this case and if he got a guideline sentence, that would be the case. But the record in this case doesn't reflect that that would be likely or probable the result in this case. The district court in the... How is that argument different from just about any case, any criminal appeal where there's a resentencing? Because it is a mootness question. And in the context of mootness, the defendant's burden to establish a live case or controversy depends on his ability to show that the court's ruling would in fact give him relief. And in this case, where the district court recognized that the facts and circumstances of this case, which I can go into if the court wishes, but involving Mr. Fluker's pointing and pulling the trigger of a gun in the face of this police officer two inches from his face, the district court recognized that the facts and circumstances of this case were absolutely outside the heartland of the drug offense, the gun offense, and even the 924C offense for which Mr. Fluker was convicted. The court had the opportunity and in fact specifically considered the question of whether or not any sentence at the resentencing below what the government was asking for, or sorry, any sentence below the guideline would result in banked time. And the court refused to do that. He specifically considered that at page J8, sorry, 348 of the J8. But he used the wrong standards. Pardon me? I mean, it was no fault of Judge Jurvansky. I mean, he was going by whatever case law there was at the time, but he used the wrong standard for a career offender and the wrong standard for the guidelines. And what I'm suggesting, Your Honor, is that the sentence the court imposed, even on resentencing, was not driven by the guidelines. But wasn't it right in the middle of the guidelines? I may be misremembering, but I thought the government had said, please depart up from the guidelines, and the court had said, no, and sentenced right in the middle of the guidelines. The government did ask for a sentence of 387 months, which was the sentence that had been previously imposed even under the ACC. And the court said, no, I'm not doing that. I'm giving a guideline sentence. And the court said he would not, and he did recognize that it was a guideline sentence. I think the sentence for count one was actually the top of the guideline, a 240, which he also noted was the statutory maximum penalty for that offense. I just don't understand. Even, I'm not entirely on board with kind of the premise here that we need to spend a lot of time trying to figure out what is likely to happen on resentencing in order to address a mootness concern that I just don't really see. But even if we were, isn't the relevant point that this court on resentencing denied the government's motion for an upward departure and said, no, I'm sentencing in the guidelines range, and it was kind of mid-guidelines range. And then, so why is it so unlikely that on resentencing, the same judge would again sentence within the guidelines, particularly in light of that newish case, Molina-Martinez, where the Supreme Court basically instructs the guidelines matter. You should assume, unless there's some good reason not to, that on resentencing, someone's going to get resentenced within the guidelines. And I think my answer to that, Your Honor, is that although the court's points are relevant, at the end of the day, in this case, what the court landed on was the time served sentence. The court crafted its sentence. Well, isn't it likely he'll do that again, and the guy will walk out? Because once again, time served will be a guideline sentence. We think that is likely, that the court would, in fact, reimpose the 308-month sentence. Time already served. Everybody go home. Well, if he's going to do that, then he'll do that. If we send him out, it's OK. And so it would turn us into the sentencing court. But what do you argue? You think this Jackson case was wrongly decided? No, Your Honor. Well, then, if we say we agree with you, that we think it's properly decided, then we publish it. And that makes the 2006, and you all agree the 2016 guidelines apply, and we make a remand. Judge Urbanski is going to take care of the case. Well, he certainly could. He would. And our position is that, on the mootness question, simply that the defendant can't show that it is likely he would get any less time than he's already got now, given that it was a time served sentence. But that's the part of the whole thing that would have a lot of impact on a lot of other cases that would come before us in other sentences. We'd be stepping out. I understand. Mootness, can I ask you a question about this Supreme Court case, Garlotti versus Fordyce? I hope I'm saying that right. And it goes to this point about how the federal sentences sort of are thought of together as an aggregate sentence. In that case, and I'm sorry I wasn't before you already, but the Supreme Court holds that a habeas, in a habeas case, that a prisoner can challenge the conviction that is the basis, same facts, the basis for the first of two consecutive sentences, even after the first one has expired and the prisoner is now serving the second, if the first has the potential to affect the release date on the second, on the theory that, as the statute says, we should look at all federal sentences running consecutively as one continuous sentence, and we can't disaggregate it. And without knowing the facts of that case, I can only suppose that perhaps, and if I'm wrong, then I'm wrong, but perhaps that case was more akin to the Werber decision that we cited in our case, where it was very clear that whatever the court decided would, in fact, impact the term of imprisonment. No, because it had the potential to affect the release date. This is just whether he was going to be eligible for parole, and no guarantee he would get it, but at least he'd be eligible. And then my question would be, again, whether it was likely under the mootness inquiry, sorry, probable, as opposed to just a possibility that the defendant would get relief based on that. I apologize, I know you don't have the case in front of you, but it did strike me that it, I think it's mostly relevant because it kind of rests on the same statute that your colleague, the same theory behind the statute that your colleague shared with us, just this idea that federal sentences are best viewed as one continuous sentence. I would point out, to the extent that it matters to that particular inquiry, that the communications from the BOP did indicate that these two sentences were de-aggregated because of the differences in the particular statutes that each conviction fell under regarding the credit for, good time credits, I think. So to the extent that the BOP regulations matter to that inquiry, these two sentences were de-aggregated. I'm not sure that that's what your honor was really making reference to in that case, but, and I did want to reemphasize that the court had pointed out in the district court that the guidelines don't take into account the conduct in this case. The court specifically, in the government's view, staked out its view that it was not the guidelines that were driving its decision in this case, and I think the record reflects that. That could be true in any remand for re-sentence. True, but I think in conjunction with the fact that the district court here landed on the time served sentence of 308 months and didn't take the opportunity, which he could have, to even give Mr. Fluker one day less time, despite counsel's request for that, after considering that if he did that, it would result in banked time against the 10-year sentence that he was serving in Florida. The court specifically declined to do that. So that really is the basis for the government's argument that Mr. Fluker's position is speculative otherwise. To loop back to the question on Jackson, it is the government's view that the court would have to resolve the Georgia robbery question in order to get to the mootness question, and assuming the court would do that. Otherwise, our position would be there would be no binding precedent even on the question of the Georgia robbery issue. So our view is that the court would have to get to that issue and resolve it. And finally, I think there was a mention in counsel's argument regarding the relationship of supervised release and the fact that Mr. Fluker remains facing a period of supervised release in this case. And our position is that because he is challenging his sentence in this case, or to the extent we're talking about whether or not his challenge to the sentence in this case, as opposed to the supervised release term, is moot, the government's view is that the Supreme Court's decision in Johnson resolves in the government's favor that question. The fact that the defendant is on supervised release does not make his challenge to this term of imprisonment not moot. They're two separate inquiries, and I think this court's case law is very clear on that, so I just wanted to add on that. And finally, in conversation with counsel, after we filed our brief, in fact, this morning, we have both realized that we should point out to the court, I think, that the supervised release term in this case was mandatory under the statute, and I think that also resolves part of the mootness question in this case, to the extent that the court gets to that. Well, at least since there is a re-sentencing, what about the evidentiary issue? I mean, this would appear to be a de novo re-sentencing, so it would pretty much start over, wouldn't it? Yes, sir. And that's the government's position, is that this was a de novo re-sentencing because it was a re-sentencing after the court, as counsel pointed out, had granted Mr. Fluke a relief under his Johnson ACCA argument. So, the government's evidence from Mr. Caldwell was absolutely appropriate as evidence, direct evidence of the offenses in this case. It would also be alternatively appropriately introduced as victim impact evidence under Section 3771, and in any event... Why would we have to pass on that? Why wouldn't that be moot? That sentence was already dealt with. I think it might be, Your Honor. Thank you. If there are no further questions, I will rely... Thank you very much. Thank you. Good to have you. Ms. Lee? Thank you, Your Honor. I do want to urge the court to review the Werber opinion out of the Second Circuit, because it is very much on point. It says, we have previously stated that collateral consequences alone will support appellate jurisdiction over a sentencing issue that may no longer affect the jail time that the defendant may serve. Therefore, this appeal is not moot because resolution of the sentencing issue will affect how long Werber is in jail, albeit on a different sentence. And that sounds consistent with the case that Judge Harris was alluding to, which I definitely need to look up, and I'm chastened that I have not come upon it. I want to be clear that the relief that Mr. Fluker seeks in this court is not to be set free. That's not before this court is whether he'll be set free. The government argues about the aggravating... It actually conflates its arguments regarding an upward variance with what the court actually did in this case. The court in this case heard the government's arguments and still found, I'm denying your upward variance, your upward departure. I'm not even going to go to the top of the guidelines. Yet, the government is suggesting that this court conclude that the district court would have imposed the same sentence, even if the guidelines were decades shorter. And there is absolutely no basis to believe that the district court in this case would impose the same sentence. The relief I seek before this court is not to be set free or a particular sentence, but it's to have a resentencing that's free of procedural error. A procedural error in this case was the miscalculation of the guidelines, which, it's well established, is the first step in any sentencing proceeding. That is all we ask of the court. And the question, can this court provide me with that relief that I seek? The answer is absolutely it can. The government's arguments as to why Mr. Fluker should or shouldn't get out, or whether he should get 308 months versus 300 months or 200 months, is absolutely only to be made in the district court. Where the government gets its claim that this district court appeared to be rejecting the guidelines, I do not know. I was present at that hearing, and he was absolutely being guided by the guidelines. I would just like to make one additional point regarding the so-called de-aggregation of Mr. Fluker's sentences. It is the case that the Bureau of Prisons Senior Counsel told Ms. Hudson and me that Mr. Fluker's sentences were de-aggregated because of certain misconduct that occurred in the 90s that resulted in loss of good time credits. And under the Bureau of Prisons policies, when you lose good time credits on a sentence that were imposed in a particular window of time, it de-aggregated from another sentence. One thing that I noticed in preparing for today's hearing is that that may be in error because the Bureau of Prisons is treating this sentence, this current Virginia sentence, that's the one that's on appeal, as a sentence modification when in fact it was a de novo resentencing. So it's not even clear that the Bureau of Prisons' own policy manual was correctly applied to de-aggregate the sentences. That's obviously not something this court is equipped to address at all, and it need not address it. What this court should address is, was error made, which the government agrees it was, and is Mr. Fluker still in prison? Which everybody knows he is. And if those two things are correct, his sentence is still going on, it won't be done until three years after his eventual release, he is entitled to a resentencing. If there are no further questions. Thank you, Ms. Lee. Thank you, Your Honor. We'll come down and re-counsel, then we'll return to the bench and speak to the hospital students. While we counsel, we'll stay with you. Do you want me to close court first? Yes, please. This Honorable Court stands adjourned until tomorrow morning. God save the United States of the Honorable Court. Thank you, sir.
judges: Robert B. King, G. Steven Agee, Pamela A. Harris